FERNAND PIERRE,

                Plaintiff,

v.                                  Case No. 3:06-cv-45-J-32JRK

OFFICER ADAM T. GRULER,
et al.,

                Defendants.

_____

**ORDER**

**I. Status**

Plaintiff Fernand Pierre, who is proceeding *pro se*, initiated this case by filing a Civil Rights Complaint (Doc. #1) pursuant to 42 U.S.C. § 1983 on January 9, 2006. He is proceeding on his Second Amended Complaint (Doc. #31), in which Plaintiff names the following Defendants: (1) Adam T. Gruler, an Orlando police officer; (2) several unknown Orlando police officers; (3) Dr. Pontz;[1] and (4) the City of Orlando. Plaintiff claims that, during a traffic stop on June 25, 2004, Officer Gruler shot him twice with a taser gun and then five or more other police officers subdued him

---

[1] Defendant's name is Dr. Edwin S. Pont and will hereinafter be referred to as "Dr. Pont."

when he fell to the ground. Plaintiff concludes that, when he fell to the ground, his left shoulder/collar bone was fractured, the left side of his face was traumatized, his jaw was fractured, his left arm impaired, and one tooth was later extracted. Further, Plaintiff claims that Dr. Pont was deliberately indifferent to his medical needs. Finally, Plaintiff asserts that the City of Orlando failed to properly train Officer Gruler on the appropriate use of a taser gun and that an injunction should be granted to ensure that proper training is provided to the employees.

Now before this Court are Defendants' pending dispositive motions: (1) Defendants' Gruler and the City of Orlando's Motion for Summary Judgment (Doc. #52) with supporting exhibits (hereinafter Gruler's Ex.) and Defendant Dr. Edwin S. Pont's Dispositive Motion for Summary Judgment (Doc. #56) with supporting exhibits (hereinafter Pont's Ex.). Since Plaintiff is appearing *pro se*, the Court previously advised him of the provisions of Fed. R. Civ. P. 56, notified him that the granting of a motion for summary judgment would represent a final adjudication of this case which may foreclose subsequent litigation on the matter, and gave him an opportunity to respond. See Court's Order (Doc. #24), filed October 24, 2006, at 3-5; Court's Orders (Docs. #65, #71, #74, #77). On January 26, 2009, Plaintiff responded to the pending motions for summary judgment. See Untitled Document (Doc. #79).

## II.  Summary Judgment Standard

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Crawford v. Carroll, 529 F.3d 961, 964 (11th. Cir. 2008) (citing Fed. R. Civ. P. 56(c) and Wilson v. B/E/Aerospace, Inc., 376 F.3d 1079, 1085 (11th Cir. 2004)).

The parties' respective burdens and the Court's responsibilities are outlined as follows:

> The movant bears the responsibility for demonstrating the basis for the summary judgment motion. [Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).] A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude grant of summary judgment. Anderson, 477 U.S. at 247-48, 106 S.Ct. 2505 (1986). An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (citing Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993)). A fact is material if it may affect the outcome of the suit under the governing law. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997). The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1260 (11th Cir. 2004) (citing Anderson, 477 U.S. at 248, 106 S.Ct. 2505).

> "When a moving party has discharged its
> burden, the non-moving party must then 'go
> beyond the pleadings,' and by its own
> affidavits, or by 'depositions, answers to
> interrogatories, and admissions on file,'
> designate specific facts showing that there is
> a genuine issue for trial." <u>Jeffery v.
> Sarasota White Sox, Inc.</u>, 64 F.3d 590, 593-94
> (11th Cir. 1995) (citing <u>Celotex</u>, 477 U.S. at
> 324, 106 S.Ct. 2548). If there is a conflict
> between the parties' allegations or evidence,
> the non-moving party's evidence is presumed to
> be true and all reasonable inferences must be
> drawn in the non-moving party's favor. <u>Shotz
> v. City of Plantation, Fla.</u>, 344 F.3d 1161,
> 1164 (11th Cir. 2003).

<u>Allen v. Bd. of Pub. Educ. for Bibb County</u>, 495 F.3d 1306, 1313-14

(11th Cir. 2007).

"It is true that on a motion for summary judgment, all

reasonable inferences must be made in favor of the non-moving

party." <u>Cuesta v. School Bd. of Miami-Dade County</u>, 285 F.3d 962,

970 (11th Cir. 2002) (citation omitted). "A court need not permit

a case to go to a jury, however, when the inferences that are drawn

from the evidence, and upon which the non-movant relies, are

'implausible.'" <u>Id</u>. (citations omitted).

The United States Supreme Court has explained how to determine

whether there is a genuine issue for trial.

> At the summary judgment stage, facts must
> be viewed in the light most favorable to the
> nonmoving party only if there is a "genuine"
> dispute as to those facts. Fed. Rule Civ.
> Proc. 56(c). As we have emphasized, "[w]hen
> the moving party has carried its burden under
> Rule 56(c), its opponent must do more than
> simply show that there is some metaphysical
> doubt as to the material facts . . . . Where

the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" <u>Matsushita Elec. Industrial Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (footnote omitted). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

<u>Scott v. Harris</u>, 127 S.Ct. 1769, 1776 (2007).

### III. Law and Conclusions

The material facts are as follows. Pierre's Second Amended Complaint reflects that, on June 25, 2004, he was dropped off at an address on Jackson Street, picked up his vehicle and drove it to a funeral reception on Albany Street. Second Amended Complaint at 8. When Pierre arrived at the funeral reception, he realized that Officer Gruler was behind him. Pont's Ex. A, Plaintiff's Deposition at 40. Pierre, while driving, did not hear the sirens or see the lights activated on Officer Gruler's marked police vehicle. Second Amended Complaint at 9. Once he arrived at his relative's house, Pierre exited his vehicle and stepped three feet away from it. <u>Id</u>.

Pierre alleges that, after he exited the vehicle, he heard someone say "turn around and put your hands behind your back." Id. Then, before he had a chance to turn around, he was zapped. Id. In his response to a request for admissions, Pierre admitted that he had heard someone say, "turn around and put your hands behind your back." Gruler's Ex. B at paragraph 7. In his deposition, Pierre testified, "I heard the police come and some guys say '[t]urn around.'" Plaintiff's Deposition at 41. However, Pierre did not react and that is when Officer Gruler said to him, "You, you, you, you. You are the one I am talking to" and then Pierre was tasered. Id.

Pierre maintains that he was trying to turn around, and that before he had a chance to do so, Officer Gruler deployed his taser. Second Amended Complaint at 9. Pierre fell to the ground and other unnamed police officers then lifted Pierre up from the ground and forced him against a car. Id. at 10. Pierre was arrested by Officer Gruler and charged with fleeing or attempting to elude a law enforcement officer, driving with license suspended with knowledge, possession of cocaine, possession of drug paraphernalia, resisting an officer without violence and violation of probation. Gruler's Ex. C, Charging Affidavits; Ex. G, Information. On October 31, 2005, Pierre was tried and convicted, by a jury, of the following crimes: possession of cocaine, possession of drug paraphernalia and resisting an officer without violence. Gruler's

Ex. D, Judgment and Sentence. As a result, he was sentenced to five years in the Department of Corrections with credit for 494 days timed served. Id. On January 30, 2007, the appellate court per curiam affirmed without issuing an opinion. Gruler's Ex. E; Ex. F.

Officer Gruler, in his Affidavit, states in pertinent part:

> Prior to becoming an Orlando police officer, I was required to attend an accredited police academy where I successfully completed a basic law enforcement training curriculum covering various aspects of law and law enforcement, including but not limited to, probable cause issues, lawful arrests, criminal laws, traffic laws, and enforcement concepts and techniques, law enforcement investigations, appropriate use of force in connection with arrests, the ethical and professional responsibilities of law enforcement officers, lawful detention of subjects, search and seizure issues, police and citizen encounters, interpersonal and human relations, courtesy, and lawful use of weapons. I have had training with regards to taser use before I was issued the device. Additionally, I have annual training that covers the use of the taser.

> On June 25, 2004, as part of my duties as an Orlando police officer, I was a patrol officer assigned to the West Division for patrol. I was in my marked patrol unit traveling eastbound on West Jackson Street, between Orange Blossom Trail and South of Westmoreland Drive.

> At approximately 11:38 p.m. that night, while traveling eastbound on Jackson Street, I observed a vehicle in front of me. I entered its tag into my mobile computer, as I routinely check tags to determine whether they are valid, whether the vehicle has been reported stolen, or for any other traffic

infractions that might occur. This check
revealed an expired registration.

Upon observing the tag, at a distance of
about two car lengths away, I also noticed
that the date of the sticker registration did
not match that of the registration provided by
the Motor Vehicles Department. This
established probable cause to initiate a
traffic stop and arrest for a criminal
violation under Florida Statute 320.261. At
that time, I initiated my emergency lights and
attempted to initiate a traffic stop but, the
vehicle continued to travel eastbound on
Jackson Street, turned right onto
Westmoreland, and continued driving on
Westmoreland. There was no heavy traffic or
any conditions alongside the road that would
have prevented the vehicle's safe stop.

At that point I initiated my sirens to
alert the Plaintiff to stop because I had
probable cause to believe the crime of
attaching [a] tag not assigned had been
committed.

The vehicle driven by the plaintiff
continued traveling for another one and a
quarter miles without stopping.

It was my belief that the defendant was
ignoring the lights and sirens and refusing to
pull over.

At Albany Street, just off of Collier
Avenue, in a residential neighborhood, the
vehicle slowed down and the door opened as the
vehicle continued to travel. Based on my
experience, the fact that the door was open
while the vehicle was still traveling was an
indication that the Plaintiff might attempt to
flee on foot prior to the vehicle coming to a
complete stop.

When the Plaintiff stopped the vehicle,
he exited and began to walk northbound and
away from my patrol vehicle. As the driver
attempted to walk north, I exited my vehicle

and ordered him to stop. In a loud, authoritative voice statement, I said, "Police, Police, Stop!" I proceeded to go in front of him to block his path of travel, at which point I withdrew my department-issued taser. It took me just a few seconds to get in front of the Plaintiff and stop his movement. The Plaintiff then turned at a forty five degree angle and attempted to walk around me. I followed his movement by stepping in front of him. At that time, I determined that I had probable cause to arrest the plaintiff for resisting arrest with violence. I ordered him to place his hands behind his back and stated that he was under arrest.

I instructed Plaintiff approximately nine to ten times to place his hands behind his back and he refused to do so.

At that point, after being asked several times to put his hands behind his back and refusing to do so, I deployed by department-issued taser onto Plaintiff's chest. Plaintiff still actively resisted and refused to comply with my requests.

I then instructed the defendant to place his hands behind his back and he again refused. I then deployed my department-issued taser. At that point, Plaintiff was subdued and I was able to secure him with my department-issued handcuffs. Once the Plaintiff was subdued and submitted to the lawful arrest, no further force was used against him.

Based upon my training and experience, the taser is a safe alternative to going "hands on" or using a weapon that can cause substantially more damage.

Use of the Taser is a preferred method of managing a non-compliant suspect because it prevents injury to both the officer and the suspect.

After securing the Plaintiff, I placed him in the back seat of my patrol vehicle and immediately took him to the Orlando Police Department.

I affirm that I used only the amount of force which was lawfully reasonable and necessary to take the Plaintiff into custody.

I had probable cause to conduct a lawful traffic stop and arrest the plaintiff for the criminal violation of Florida Statute 320.261. Once he refused my lawful command to pull over and ignored the lights and sirens coming from my marked patrol car, there was probable cause to stop and arrest the plaintiff for fleeing to elude. When Plaintiff continually refused my commands to place his hands behind his back and submit to the lawful arrest, I had probable cause to arrest him for resisting an officer without violence.

Fleeing to Elude is a third degree felony and is [a] serious crime.

In my experience, a suspect that is willing to flee is a threat to public safety.

I feared for my safety when plaintiff's refusal to comply with my commands indicated a willingness to resist arrest and I was unsure what he would do to avoid apprehension.

Plaintiff did actively resist and appeared to try and evade arrest by fleeing in his automobile.

At all times during my encounter with the Plaintiff on June 25, 2004, I was acting within the course and scope of my duties as an Orlando Police Officer.

Gruler's Ex. H, Affidavit (hereinafter Gruler's Affidavit).

Plaintiff claims that Officer Gruler's "illegal and unethical zapping" of him when he was unarmed and unaware that Gruler was in

pursuit of him constitutes a violation of his Fourth Amendment right. Plaintiff also states that the said violation was exacerbated when Officer Gruler failed to provide medical care. Defendant Gruler contends that he is entitled to qualified immunity from damages.

The Eleventh Circuit has reviewed the qualified immunity principles.

> "The defense of qualified immunity completely protects government officials performing discretionary functions from suit in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Gonzalez, 325 F.3d at ----, 2003 WL 1481583, at *3 (quoting Hope v. Pelzer, 536 U.S. 730, 122 S.Ct. 2508, 2515, 153 L.Ed.2d 666 (2002)); Vinyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002). To receive qualified immunity, a government official first must prove that he was acting within his discretionary authority. Gonzalez, 325 F.3d at ----, 2003 WL 1481583, at *4 (citing Vinyard, 311 F.3d at 1346).

Cottone v. Jenne, 326 F.3d 1352, 1357-58 (11th Cir. 2003). In this case, the Defendant was acting within his discretionary authority as an Orlando police officer involved in daily police operations.

Thus, once Defendant has established that he was acting within his discretionary authority, the burden then shifts to the Plaintiff to show that the Defendant is not entitled to qualified immunity. Galvez v. Bruce, 552 F.3d 1238, 1242 (11th Cir. 2008). The Supreme Court has established a two-part test to determine the applicability of qualified immunity.

> "The threshold inquiry a court must undertake in a qualified immunity analysis is whether [the] plaintiff's allegations, if true, establish a constitutional violation." <u>Hope</u>, 122 S.Ct. at 2513. If, under the plaintiff's allegations, the defendants would have violated a constitutional right, "the next, sequential step is to ask whether the right was clearly established." <u>Saucier v. Katz</u>, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).

<u>Vinyard v. Wilson</u>, 311 F.3d 1340, 1358 (11th Cir. 2002); <u>Dalrymple v. Reno</u>, 334 F.3d 991, 995 (11th Cir. 2003), <u>cert</u>. <u>denied</u>, 541 U.S. 935 (2004).

The Eleventh Circuit very recently evaluated the qualified immunity principles in the context of a claim for excessive force.

> "'The Fourth Amendment's freedom from unreasonable searches and seizures encompasses the plain right to be free from the use of excessive force in the course of an arrest.'" <u>McCormick v. City of Fort Lauderdale</u>, 333 F.3d 1234, 1244 (11th Cir. 2003) (<u>quoting</u> <u>Lee</u>, 284 F.3d at 1197). "'Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it.'" <u>Lee</u>, 284 F.3d at 1197 (<u>quoting</u> <u>Graham v. Connor</u>, 490 U.S. 386, 396, 109 S.Ct. 1865, 1871-72, 104 L.Ed.2d 443 (1989)). Therefore, the question we ask is whether, under [Pierre's] version of the facts, [Officer Gruler] "behaved reasonably in the light of the circumstances before him." <u>McCormick</u>, 333 F.3d at 1244 (<u>citing</u> <u>Vinyard</u>, 311 F.3d at 1347). "[T]he force used by a police officer in carrying out an arrest must be reasonably proportionate to the need for that force, which is measured by the severity of the crime, the danger to the officer, and the risk of flight." <u>Lee</u>, 284 F.3d at 1198.

<u>Galvez v. Bruce</u>, 552 F.3d at 1242-43.

Clearly, if no constitutional violation is established, then the officer prevails, and there is no need to proceed to the next step of determining if a constitutional right was clearly established. <u>See</u> <u>Whitner v. Moore</u>, 160 Fed.Appx. 918, 921-22 (11th Cir. 2005); <u>Storck v. City of Coral Springs</u>, 354 F.3d at 1314 (citation omitted); <u>Lumley v. City of Dade City, Fla.</u>, 327 F.3d 1186, 1194 (11th Cir. 2003) (stating that the threshold inquiry is whether the plaintiff's allegations, if true, establish a constitutional violation, and the next sequential step is to ask whether the right was clearly established).

Based on the undisputed facts presented in the record before this Court with respect to the arrest of Plaintiff and the deployment of the taser gun by Officer Gruler, Defendant Gruler is entitled to qualified immunity since he had *arguable* probable cause to arrest (reasonable officers in the same circumstances and possessing the same knowledge as the Defendant could have believed that probable cause existed to arrest Plaintiff). Officer Gruler first tried to initiate a traffic stop because of a minor traffic violation. Under Florida law, it is a second degree misdemeanor to knowingly attach a registration license plate to a vehicle other than the one to which it was assigned. Fla. Stat. § 320.261. Officer Gruler believed that the vehicle that Pierre was driving had a registration license plate that was assigned to a different

car. Therefore, it was reasonable for Officer Gruler to believe that Pierre was driving a vehicle in violation of § 320.261. Since there was arguable probable cause for Pierre's arrest, there is no constitutional violation and he is entitled to qualified immunity from damages on this claim.

Pierre was suspected of committing three different crimes before any force was used and one of the crimes was a serious third degree felony. Officer Gruler attempted to conduct a traffic stop by using his lights and sirens, but Pierre did not respond. Therefore, Officer Gruler reasonably suspected that Pierre was fleeing or attempting to elude him, which is a third degree felony. Officer Gruler stated that in his experience as a police officer, "a suspect that is willing to flee is a threat to public safety." Gruler's Affidavit at 4.

Thus, from Officer Gruler's perspective, the suspect posed an immediate threat to the safety of the officer. Officer Gruler had attempted to stop Pierre's vehicle for some period of time, but to no avail. Once Pierre was out of his vehicle, he continued to be unresponsive to Officer Gruler. Based on these actions, Officer Gruler believed that Pierre would take additional action to avoid an arrest. Officer Gruler reasonably believed that his safety and the public safety were threatened because of Pierre's unwillingness to submit to his official authority.

Lastly, Officer Gruler reasonably believed that Pierre was actively resisting arrest and attempting to evade arrest by flight. Pierre was unresponsive to Officer Gruler's attempts to pull him over. And, while Pierre claims that he did not see the emergency lights on Officer Gruler's police car until after he had exited his vehicle (Plaintiff's Deposition at 40), the excessive force claim must be evaluated from Officer Gruler's perspective at the time of the incident. The fact that Pierre had not responded to Officer Gruler's attempts to stop his vehicle created a reasonable belief that Pierre was actively attempting to evade arrest by flight. Officer Gruler also attempted to apprehend Pierre after he exited his vehicle, but again Pierre was not responsive. The situation was uncertain and tense for Office Gruler. The use of the taser may have prevented the situation from escalating and causing serious harm to both Pierre and Officer Gruler.

Thus, applying the factors set forth in <u>Graham</u>,[2] Officer Gruler's actions were reasonable and he is entitled to qualified immunity from damages on the excessive use of force claim. <u>See</u> <u>Draper v. Reynolds</u>, 369 F.3d 1270, 1277-78 (11th Cir.) (holding that the deputy's use of a taser gun to effectuate the arrest did

_____

[2] <u>See</u> <u>Graham v. Connor</u>, 490 U.S. 386, 396 (1989) (stating that the amount of force that a police officer reasonably can use without being excessive depends upon the totality of the circumstances, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.").

not constitute excessive force given the suspect's repeated refusals to comply with the officer's verbal commands), <u>cert</u>. <u>denied</u>, 543 U.S. 988 (2004).

Further, any claim against Officer Gruler for failure to provide medical care after the tasering is without merit. Plaintiff Pierre has not alleged a serious medical need that Officer Gruler knew posed a risk of serious harm. Nor has Pierre alleged that Officer Gruler disregarded any risk by conduct that is more than mere negligence.

In the Second Amended Complaint, Plaintiff has also named unknown police officers who apparently subdued him after he fell to the ground from the tasering. Plaintiff's claim fails since he has not named the officers and has not set forth specific facts with respect to any excessive force used upon him. Officer Gruler has stated that "[o]nce the Plaintiff was subdued and submitted to the lawful arrest, no further force was used against him." Gruler's Affidavit at 4.

Additionally, Plaintiff claims that the City of Orlando failed to properly train Officer Gruler in the appropriate use of a taser gun. As noted above, Officer Gruler's actions were reasonable, in light of all the circumstances at that time. With respect to his training, Officer Gruler explained that, prior to being issued the taser, he was trained in the proper use of the department-issued taser. Further, he receives annual training that covers the use of

the taser.  Plaintiff admits that he was "zapped" twice, and Officer Gruler explained that he used the taser the second time only when "Plaintiff still actively resisted and refused to comply with my requests."  Gruler's Affidavit at 3.  Plaintiff's claim against the City of Orlando is without merit.

Finally, Plaintiff claims that Dr. Pont was deliberately indifferent to his serious medical needs.  Second Amended Complaint at 13.  He sues Dr. Pont for the medical treatment Plaintiff received at the jail.  Specifically, Pierre claims that Dr. Pont failed to adequately treat a shoulder injury that allegedly occurred when Plaintiff fell to the ground as a result of the tasering on June 25, 2004.

With regard to Plaintiff's claim of being subjected to cruel and unusual punishment in violation of the Eighth Amendment, the Eleventh Circuit has stated:

> It is well established that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' . . . proscribed by the Eighth Amendment." Estelle v. Gamble, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 241 (1976) (citation and footnotes omitted). A prisoner states a valid claim, under 42 U.S.C. section 1983, "whether the indifference is manifested by prison doctors in their response to the prisoner's need . . . or by prison guards in intentionally denying or delaying access to medical care . . . or intentionally interfering with treatment once proscribed." Id. at 104-05, 97 S.Ct. at 291.
>
> "To show that a prison official acted with deliberate indifference to serious

medical needs, a plaintiff must satisfy both
an objective and a subjective inquiry."
<u>Farrow v. West</u>, 320 F.3d 1235, 1243 (11th Cir.
2003). First, the plaintiff must prove an
objectively serious medical need. <u>Id</u>.
Second, the plaintiff must prove that the
prison official acted with deliberate
indifference to that need." <u>Id</u>

"A serious medical need is considered
'one that has been diagnosed by a physician as
mandating treatment or one that is so obvious
that even a lay person would easily recognize
the necessity for a doctor's attention.'" <u>Id</u>.
(citing <u>Hill v. Dekalb Reg'l Youth Det. Ctr.</u>,
40 F.3d 1176, 1187 (11th Cir. 1994)). In
either case, "the medical need must be one
that, if left unattended, pos[es] a
substantial risk of serious harm." <u>Id</u>.
(citation and internal quotations marks
omitted).

<u>Brown v. Johnson</u>, 387 F.3d 1344, 1351 (11th Cir. 2004).

With reference to the denial of medical care, the Eleventh

Circuit has explained:

In <u>Estelle v. Gamble</u>, the Supreme Court
held that a prison official's "deliberate
indifference to [the] serious medical needs of
[a] prisoner[ ] constitutes the unnecessary
and wanton infliction of pain . . . proscribed
by the Eighth Amendment." <u>Estelle</u>, 429 U.S.
at 104, 97 S.Ct. 285 (quotation marks and
citation omitted); <u>see</u> <u>Campbell v. Sikes</u>, 169
F.3d 1353, 1363 (11th Cir. 1999). "However,
not 'every claim by a prisoner that he has not
received adequate medical treatment states a
violation of the Eighth Amendment.'"
<u>McElligott v. Foley</u>, 182 F.3d 1248, 1254 (11th
Cir. 1999) (citation omitted); <u>see</u> <u>Estelle</u>,
429 U.S. at 106, 97 S.Ct. 285 ("Medical
malpractice does not become a constitutional
violation merely because the victim is a
prisoner."). The inadvertent or negligent
failure to provide adequate medical care
"cannot be said to constitute 'an unnecessary

and wanton infliction of pain.'" <u>Estelle</u>, 429
U.S. at 105-06, 97 S.Ct. 285.

<u>Farrow v. West</u>, 320 F.3d 1235, 1243 (11th Cir. 2003).

The Eleventh Circuit, when addressing a claim of deliberate indifference to a serious medical need, has succinctly captured the state of the law with respect to what actually constitutes deliberate indifference:

> In <u>Estelle</u>, the Supreme Court established
> that "deliberate indifference" entails more
> than mere negligence. <u>Estelle</u>, 429 U.S. at
> 106, 97 S.Ct. 285; <u>Farmer</u>, 511 U.S. at 835,
> 114 S.Ct. 1970. The Supreme Court clarified
> the "deliberate indifference" standard in
> <u>Farmer</u> by holding that a prison official
> cannot be found deliberately indifferent under
> the Eighth Amendment "unless the official
> *knows of* and *disregards an excessive risk to*
> *inmate health or safety*; the official must
> both be aware of facts from which the
> inference could be drawn that a substantial
> risk of serious harm exists, and he must also
> draw the inference." <u>Farmer</u>, 511 U.S. at 837,
> 114 S.Ct. 1970 (emphasis added). In
> interpreting <u>Farmer</u> and <u>Estelle</u>, this Court
> explained in <u>McElligott</u> that "deliberate
> indifference has three components: (1)
> subjective knowledge of a risk of serious
> harm; (2) disregard of that risk; (3) by
> conduct that is more than mere negligence."
> <u>McElligott</u>, 182 F.3d at 1255; <u>Taylor</u>, 221 F.3d
> at 1258 (stating that defendant must have
> subjective awareness of an "objectively
> serious need" and that his response must
> constitute "an objectively insufficient
> response to that need").
>
> This Court has provided guidance
> concerning the distinction between "deliberate
> indifference" and "mere negligence." For
> instance, we have stated that "an official
> acts with deliberate indifference when he
> knows that an inmate is in serious need of

> medical care, but he fails or refuses to
> obtain medical treatment for the inmate."
> <u>Lancaster v. Monroe County</u>, 116 F.3d 1419,
> 1425 (11th Cir. 1997). Alternatively, "[e]ven
> where medical care is ultimately provided, a
> prison official may nonetheless act with
> deliberate indifference by delaying the
> treatment of serious medical needs, even for a
> period of hours, though the reason for the
> delay and the nature of the medical need is
> relevant in determining what type of delay is
> constitutionally intolerable." <u>McElligott</u>,
> 182 F.3d at 1255. For example, a defendant
> who delays necessary treatment for non-medical
> reasons may exhibit deliberate indifference.
> <u>Hill</u>, 40 F.3d at 1190 n. 26; <u>H. C. by Hewett
> v. Jarrad</u>, 786 F.2d 1080, 1086 (11th Cir.
> 1986) (citing <u>Ancata v. Prison Health Servs.,
> Inc.</u>, 769 F.2d 700, 704 (11th Cir. 1985)).

<u>Farrow</u>, 320 F.3d at 1245-46.

Dr. Pont provided medical treatment to Plaintiff during Plaintiff's incarceration at the jail. Dr. Pont first saw Plaintiff in mid-July 2004 when he gave Plaintiff medication for the shoulder pain. Second Amended Complaint at 11. In August 2004, Dr. Pont took x-rays of Plaintiff's left shoulder and referred Plaintiff to Dr. George White, a local orthopedic surgeon. Pont's Ex. B, Dr. Pont's Affidavit at 2. Plaintiff was examined and treated by Dr. White on August 12, September 16, October 13, and October 28, 2004. Pont's Ex. C, Itemized Charges. Dr. Pont noted improvement in Plaintiff's condition on December 3, 2004, and an improved range of motion in his left shoulder on December 9, 2004. Pont's Ex. D, Intra Disciplinary Team Progress Notes; Ex. E, Chronic Illness Clinic Progress Note.

On March 1, 2005, Dr. Pont noted Plaintiff was able to easily abduct his shoulder. Pont's Ex. F, Intra Disciplinary Team Progress Notes. Dr. Pont examined Plaintiff on March 9, 2005, and determined that Plaintiff's shoulder was improved with good range of motion. Pont's Ex. G, Chronic Illness Clinic Progress Note. Dr. Pont noted the rotation of the shoulder was good on May 19, 2005. Pont's Ex. H, Intra Disciplinary Team Progress Notes. Dr. Pont also continually provided Plaintiff with prescriptions for appropriate medication. Pont's Ex. I, Order Sheets.

In addition to being examined and treated by Dr. Pont and Dr. White, Plaintiff underwent surgery on his shoulder on October 12, 2004. Plaintiff's Deposition at 19, 20. Following an MRI on August 23, 2004, Plaintiff was provided at least six sessions of physical therapy. Id. at 19, 21. The medical procedures were paid for by Orange County. Id. at 21-22.

Regardless of the extensive treatment provided to Plaintiff, he continually complained and requested more treatment. He did this by filing numerous requests for administrative remedies, which were regularly found to be unsubstantiated by jail employees. Pont's Ex. J; Ex. K; Ex. L. His medical records show that he was receiving continual medical care, including physical therapy. Pont's Ex. J. Plaintiff was also provided with medication at the jail, including but not limited to Lisinopril and Prilosac. Pont's Ex. M, Medication Contract, dated February 15, 2005.

Defendant Pont contends that summary judgment should be entered in his favor and that he is entitled to qualified immunity. It is undisputed that he was acting within his discretionary authority as a physician for the Orange County Jail. Pont's Affidavit at 3. Further, Plaintiff received extensive and reasonable medical treatment by Dr. Pont and other medical providers at the jail. Id. at 2.

Clearly, based on the record before this Court, Defendant Pont was not deliberately indifferent to Plaintiff's serious medical needs. Quite to the contrary, Defendant Pont attended to Plaintiff's medical needs and promptly referred him to an orthopedic surgeon. His medical records reflect continual improvement.

At most, Plaintiff has presented a claim of negligence against Defendant Pont, which is insufficient to support an Eighth Amendment violation. See Wilson v. Seiter, 501 U.S. 294 (1991); Daniels v. Williams, 474 U.S. 327, 347 (1986); Davidson v. Cannon, 474 U.S. 344 (1986) (noting that the Due Process Clause is not implicated by a negligent act of an official causing an unintended loss of or injury to life, liberty, or property).

Accordingly, it is now

**ORDERED AND ADJUDGED:**

1.    Defendants Gruler and the City of Orlando's Motion for Summary Judgment (Doc. #52) is **GRANTED.**

2.    Defendant Dr. Edwin S. Pont's Dispositive Motion for Summary Judgment (Doc. #56) is **GRANTED.**

3.    The Clerk shall enter judgment in favor of the Defendants and close this case.

**DONE AND ORDERED** at Jacksonville, Florida this 16th day of February, 2009.


TIMOTHY J. CORRIGAN
United States District Judge


sc 2/13
c:
Fernand Pierre
Counsel of Record